## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PAUL HAN, individually and on behalf of a class of similarly situated persons,<br><br>    Plaintiffs,<br>  v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>    Defendant. | Civil Action No. 21-04219 (JXN) (JRA)<br><br><br>**MEMORANDUM AND ORDER** |

**NEALS**, District Judge

This matter comes before the Court on Defendant State Farm and Casualty Company's ("State Farm" or "Defendant") Motion to Dismiss Plaintiff Paul Han's ("Plaintiff") Complaint (ECF No. 5), and Motion to Compel Appraisal and Stay (ECF No. 7). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons set forth below, Defendant's Motion to Compel Appraisal and Stay is granted. Defendant's Motion to Dismiss Plaintiff's Complaint is denied as moot.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This action arises out of an insurance dispute. Plaintiff is the owner of real property located at 46 Chateau Road, Palisades Park, New Jersey (the "Property"), (ECF No.1, Ex. 1, Complaint ("Compl.") ¶¶ 45, 47.) Plaintiff's Property was insured under a property and casualty insurance policy issued by State Farm (the "Policy"). (Compl. ¶ 46.)[1] On July 27, 2020, the Property was

---

[1] State Farm submitted a certified copy of the Policy as Exhibit 1 to its Motion to Dismiss on March 26, 2021 (*See* ECF No. 5-1) and included an excerpt of the Policy's "Appraisal" provision as Exhibit 7 to the Declaration of Robert T. Pindulic ("Pindulic Dec.") with its Motion to Compel Appraisal and Stay Case. (*See* ECF No. 7-2.)

damaged by fire. (Compl. ¶¶ 45, 47.) Plaintiff submitted an insurance claim under his Policy. (Compl. ¶ 49.)

On October 23, 2020, State Farm provided Plaintiff with an estimate of the costs to repair his Property, along with an actual cash value payment of $219,475.26 to cover those estimated repair costs. (ECF No. 7-2, Declaration of Robert T. Pindulic ("Pindulic Decl."), Exs. 1, 2.) Plaintiff claims that State Farm applied the incorrect price setting in the Xactimate software program[2] to estimate of the replacement costs of the loss to his Property, resulting in an underpayment of his claim. (Compl. ¶ 13, 51, 66.) Specifically, Plaintiff alleges that despite knowing his Property loss was a "partial loss only," State Farm applied the lower "new construction" price setting in the Xactimate program rather than using the higher "reconstruction" price setting to prepare his estimate. (Compl. ¶¶ 50-54, 66.)

On February 4, 2021, Plaintiff's public adjuster, North Jersey Public Adjusters, Inc. ("NJPA"), emailed State Farm a competing estimate of the cost to repair the damage to Plaintiff's Property, which was higher than State Farm's estimate. (Compl. ¶ 52; Pindulic Decl., Ex. 3 at 72-105.) Plaintiff claims State Farm "refused to reconsider its decision or to revise its estimate." (Compl. ¶ 53.) The same day, Plaintiff filed a lawsuit against State Farm in the Superior Court of New Jersey, Law Division, Bergen County (Docket No. BER-L-794-21) ("State Court"). (See Compl.)

---

[2] The Xactimate software program is "widely used in the insurance industry to estimate the cost of damage caused by fire and other insured risks." (Id. at ¶¶ 11-12.) The program provides users with a choice of pricing repair costs based on work in restoration, service, or remodeling environments (hereinafter referred to as "reconstruction") or based on rebuilding in its entirety, from the foundation up, resulting from an actual or constructive total loss to the insured's property (hereinafter referred to as "new construction. (Compl. ¶¶ 18-21.)  According to the Plaintiff, "for most construction line items priced by Xactimate "the cost of that item for a reconstruction is higher than the pricing of the same item for new construction" because it contemplates, for example, "the increased cost of demolition and preparation necessitated by the existing damage." (Compl. ¶¶ 22-23.)

Plaintiff's Complaint asserts four causes of action for Breach of Contract (Count One); Tortious Bad Faith (Count Two); violation of the New Jersey Consumer Fraud Act ("NJCFA") (Count Three) and Prima Facie Tort (Count Four). (Compl. ¶¶ 44-73.) In addition to his individual claims, Plaintiff asserts class claims on behalf of "all State Farm property and casualty policyholders" who suffered a "partial loss to real property as the result of a covered cause of action within six years prior to the filing of this lawsuit, and as to whom State Farm relied upon an Exactimate [sic] estimate based on new construction pricing rather than on reconstruction pricing." (Compl. ¶ 76.) The alleged classes include residents from New Jersey (Class A), New York (Class B), Pennsylvania (Class C), and all other states (except for Texas, California and Florida) (Class D). (Compl. ¶¶ 75, 76, 80, 81, 82.)[3] On March 5, 2021, State Farm removed this action to the United States District Court for the District of New Jersey. (*See* ECF No. 1.)

On March 15, 2021, State Farm sent Plaintiff's counsel a letter itemizing the parties' disputes over the amount of loss and advising of State Farm's intention to demand appraisal if the parties could not resolve their pricing dispute. (Pindulic Decl., Ex. 4.) In the letter, State Farm wrote: "It appears that State Farm and NJPA agree on the scope of covered repairs to the house, but disagree on the pricing for those repairs." (*Id.*)

On March 26, 2022, State Farm invoked the Policy's appraisal provision. (Pindulic Decl., Ex. 5.) According to the Policy's appraisal provision, either party may demand an appraisal to determine the amount of loss. (ECF No. 5-1 at 64-65; ECF No. 7-1 at 3; Pindulic Decl. Ex. 7.) Specifically, the appraisal provision of the Policy states:

---

[3] The Complaint asserts the same breach of contract, bad faith and prima facie tort claims on behalf of the proposed classes, along with class claims for violation of the NJCFA, violation of New York General Business Law Section 349(a), violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, "Deceptive Practices" under other "applicable consumer protection statutes," and common law fraud. (*See* Compl. ¶¶ 90-397.)

> **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. Only **you** or **we** may demand appraisal. A demand for appraisal must be in writing. You must comply with **SECTION I - CONDITIONS, Your Duties After Loss** before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

(Pindulic Decl. Ex. 7) (emphasis in original.) Plaintiff's counsel responded to the demand on March 29, 2022, advising that Plaintiff declined State Farm's request for appraisal. (Pindulic Decl., Ex. 6.)

State Farm filed a Motion to Dismiss the complaint under Fed. R. Civ. P. 12(b)(6) and, with respect to Plaintiff's asserted class claims, under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (ECF No. 5.)[4] On April 5, 2021, State Farm moved to compel an appraisal pursuant to the terms of Plaintiff's Policy with State Farm and stay the case pending completion of the appraisal process. (ECF No. 7.) Plaintiff opposed the motion (ECF No. 18) and Defendant replied in further support (ECF No. 21).

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(d).

## II.   DISCUSSION

The state of New Jersey requires that a basic fire insurance policy contain certain clauses, including an "appraisal" clause. *See* N.J.S.A. § 17:36-5.20. The purpose of an appraisal is "to submit disputes to third parties and effect their speedy and efficient resolution without recourse to the courts." *Elberon Bathing Co., Inc. v. Ambassador Ins. Co., Inc.*, 389 A.2d 439, 446 (N.J. 1978). "Federal and state courts in New Jersey have held that appraisal clauses in fire insurance policies are enforceable against both insurers and their insured. *See, Shearer v. State Farm Fire & Cas. Co.*, 2017 WL 3611743, at *2 (D.N.J. Aug. 22, 2017) (citing *Drescher v. Excelsior Ins. Co. of*

---

[4] Plaintiff opposed the motion (ECF No. 6) and Defendant replied in further support (ECF No. 8).

*N.Y.*, 188 F. Supp. 158, 159 (D.N.J. 1960); *Hala Cleaners, Inc. v. Sussex Mut. Ins. Co.*, 115 N.J. Super. 11, 13, 277 A.2d 897, 898 (N.J. Super. Ct. Ch. Div. 1971) ("an insured as well as an insurance company can insist that the appraisal procedures described in the standard form of fire policy be followed"). "When the terms of an insurance contract are clear, it is the function of a court to enforce it as written and not make a better contract for either of the parties." *Kampf v. Franklin Life Ins. Co.*, 33 N.J. 36, 43 (1960) (internal citation omitted).

State Farm argues that it invoked its right to appraisal to resolve the dispute over the amount of loss to Plaintiff's Property in accordance with the parties' Policy. (ECF No. 7-1 at 7.) State Farm asserts that "until an appraisal is completed, it is impossible to know whether, in fact, Plaintiff's [] claim was undervalued" as alleged in the Complaint. (*Id.* at 8.) In opposing the motion Plaintiff argues that (1) there are "disputes about scope" between State Farm's repair estimate and the estimate Plaintiff's public adjuster, NJPA, prepared "that would put this dispute beyond the realm of appraisal" (*See* ECF No. 18, at 5, 11.) because "numerous issues of scope exist" this dispute is not subject to appraisal, (*Id.* at 10-11); (2) Next, Plaintiff contends that State Farm's invocation of the appraisal provision "is untimely because its conduct in committing fraud against the insured during the adjustment process acted as a waiver of its right to demand appraisal, thereby terminating that right," (*Id.* at 13); (3) Finally, Plaintiff argues that even if State Farm is entitled to demand appraisal, it should be deferred to a later time as it would "defeat the interest of justice to postpone for some indefinite period Plaintiff's right to pursue his claims and thereby expose State Farm's massive fraud," (*Id.* at 16). The Court disagrees.

Here, the Policy unambiguously provides that if the parties "fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. (Pindulic Decl. Ex. 7.) Plaintiff asserts, for the first time, that there are "numerous disputes over scope that cannot be

5

appraised," and refers the Court to his expert Harold Tepper, P.E.'s "self-explanatory" report for the "details explained" therein. (ECF No. 18 at 8, 10-11.) These alleged disputes over scope are not part of Plaintiff's claims, to the contrary, the Complaint alleges that "[t]he fire constituted a covered occurrence under the [P]olicy" and State Farm has "acknowledged liability." (See e.g., Compl. ¶¶ 48, 54-55, 60-61, 65-66, 71-72.) Plaintiff does allege however that State Farm's use of Xactimate's lower, new construction pricing rather than reconstruction pricing when determining the replacement value of his fire-damaged property resulted in a devaluation of his claim. (Compl. ¶¶ 50-51.) Accordingly, it is clear to the Court that this is a pricing dispute that falls within the scope of an appraisal. *See Shearer,* 2017 WL 3611743, at *3 (Plaintiffs' position regarding the proper valuation method is immaterial to whether State Farm may seek an appraisal under the Policy.); see also *Enger v. Allstate Ins. Co,* 407 F. App'x 191, 193 (9th Cir. 2010) (affirming dismissal of complaint in favor of appraisal of dispute over insurer's method of valuing actual cash value); *Bettor v. Esurance Property & Cas. Ins. Co.,* No. 18-61860-Civ-Moreno/Seltzer, 2019 WL 2245564, at *3 (S.D. Fla. Mar. 28, 2019) (granting motion to compel appraisal of dispute over insurer's methodology for calculating actual cash value).

Next, Plaintiff argues that State Farm's appraisal request is untimely because in its use of new construction pricing, constitutes "fraud against the insured" and acted as a waiver of its right to demand appraisal..." (ECF No. 18 at 13.) First, the Court notes that "[w]aiver involves the intentional relinquishment of a known right, and thus it must be shown that the party charged with the waiver knew of his or her legal rights and deliberately intended to relinquish them." Transamerica Occidental Life Ins. Co. v. Total Sys., Inc., 2008 WL 4601764, at *3 (D.N.J. Oct. 15, 2008) (quoting *Shebar v. Sanyo Bus. Sys. Co.,* 111 N.J. 276, 291, 544 A.2d 377 (1988)). Other than claiming State Farm's waiver, Plaintiff has not provided the Court with anything that

6

establishes an intentional relinquishment by State Farm of its right to appraisal. Additionally, the Court finds that State Farm's demand was made within a reasonable time. State Farm notified Plaintiff of its intention to seek appraisal and demanded the same within seven weeks of receiving Plaintiff's competing estimate challenging the repair costs. Further, Plaintiff concedes that the Policy's appraisal provision does not contain a limitation period, and that the filing of this lawsuit does not preclude State Farm from of its right to appraisal under the Policy. (See *id.* at 12.) In fact, the Policy states that "[n]o action will be brought against *us* unless there has been full compliance with all of the policy provisions." (Pindulic Decl. Ex. 7 at 219, ¶ 6.)

Finally, the Court finds that an appraisal is also timely here because it has the potential to resolve the dispute between the parties, or, at minimum, to provide a factual basis for further discussion between the parties to determine if resolution is possible. Accordingly, State Farm's demand for an appraisal is proper under the Policy, and the Court will grant State Farm's motion to compel appraisal and stay the case pending the outcome of the appraisal process.

The Court will not address State Farm's Motion to Dismiss Plaintiff's Complaint (ECF No. 5) on the merits in light of its ruling on State Farm's Motion to Compel. If the appraisal does not resolve the dispute between the parties and the stay will be lifted and State Farm may renew its motion. Accordingly,

**IT IS** on this 30ᵗʰ day of June, 2022,

**ORDERED** that the Motion to Compel Appraisal and Stay Case (ECF No. 7) is **GRANTED**; and it is further

**ORDERED** that this action is STAYED pending the appraisal to be conducted pursuant to the Policy; and it is further

**ORDERED** that the Motion to Dismiss Plaintiffs' Complaint (ECF No. 5) is **DENIED** as moot; and it is further

**ORDERED** that the parties are to file a status report within sixty (60) days to update the Court on the appraisal process.

JULIEN XAVIER NEALS
United States District Judge

8